**ӨORIGINAL**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**

**MAY 2 1 2013**

**U.S. COURT OF**
**FEDERAL CLAIMS**

ANIS ATTIA,                          )
                                     )
            Plaintiff,               )
                                     )
    v.                               )        No. 11-588C
                                     )        (Judge Bush)
                                     )
THE UNITED STATES,                   )
                                     )
            Defendant.               )

## DEFENDANT'S MOTION TO STAY

Defendant, the United States, respectfully requests the Court to stay proceedings in this action to allow the United States Army to resolve administrative issues related to the reinstatement of Mr. Attia pursuant to the Army Board for Correction of Military Records (ABCMR or board) decision issued on December 7, 2012. In support of this motion, we rely upon this brief, the complaint, the attached appendix, and documents in the administrative record, filed on January 3, 2012. *Pro se* plaintiff, Anis Attia, has represented to counsel for the Government that he consents to this motion to stay the proceedings.

## BACKGROUND

Mr. Attia's complaint centers on his discharge from the Army on April 14, 2009. Specifically, Mr. Attia alleges in claim one of his complaint that the Army discharged him without fulfilling proper counseling requirements. Compl. at ¶¶ 18-20. Claim two alleges that, in violation of applicable regulations, a medical examination was not completed before he appeared before the separation board. Compl. ¶¶ 25-26. Claim three alleges that the separation board hearing violated Mr. Attia's due process rights. Compl. ¶¶ 23-44. Claim four alleges that Mr. Attia is entitled to reinstatement and certain back pay. Compl ¶¶ 45-52. Finally, claim five demands that Mr. Attia's military records be corrected to expunge derogatory information, to restore his top secret security clearance, and to include a letter explaining the circumstances of his absence from duty. Compl. ¶¶ 58-54 [sic].

On February 8, 2012, the parties filed a joint motion to stay the proceedings so that Mr.
Attia could file a proper claim before the ABCMR. Joint Motion To Stay, Dkt. No. 15 (Feb. 8,
2012). The stay at that time was necessary to resolve most, if not all, of the case
administratively and to provide a more complete administrative record to aid in the Court's
review. *Id.* at 5. The Court granted the parties' joint motion to stay these proceedings on
February 17, 2012, pending Mr. Attia's submission of an application to the ABCMR. Order,
Dkt. No. 16 (Feb. 17, 2012). Mr. Attia filed his petition to the ABCMR on April 2, 2012. In his
application, Mr. Attia asserted four claims: (1) wrongful discharge, reinstatement into the Army,
and back pay; (2) medical evaluation upon reinstatement based upon alleged medical
malpractice; (3) repayment of dual allowances and payment of non-cash compensation; and (4)
the correction of his military records.

On December 7, 2012, the ABCMR granted in part and denied in part Mr. Attia's
petition. A13.[1] The board found that Mr. Attia was "technically denied due process" and is
therefore entitled to reinstatement in the Army with associated backpay and allowances. *Id.*
The board found that Mr. Attia's claim for payment of non-cash compensation would be
adequately resolved by his reinstatement with associated back pay and allowances. *Id.* The
board further determined that Mr. Attia's contentions that the Army failed to provide proper
medical care lacked merit. *Id.* The board did not address Mr. Attia's request for the correction
of his military records. *Id.* Following a joint status report apprising the Court of the ABCMR
decision, the Court scheduled the briefing for the parties' motions for judgment upon the
administrative record. Order, Dkt. No. 22 (Jan. 18. 2013). Currently, the Government's cross-
motion for judgment upon the administrative record and response is due on May 22, 2013.

Since the ABCMR decision was issued, the Army has been working diligently to
reinstate Mr. Attia to active duty. The Human Resources Command (HRC), however, has
encountered a number of issues that have frustrated its effort to effectuate the ABCMR decision.
The HRC has discovered that, because Mr. Attia is not being placed on active duty through

---

[1] "A___" refers to a page number within the Appendix filed with this motion.

conventional channels, there are administrative issues preventing the processing of his reinstatement. Although the HRC has been able to restore Mr. Attia to the personnel database, HRC has determined that Mr. Attia's reinstatement to active duty status will require the coordination of several Army components and the development of new procedures to facilitate the process. The resolution of these issues will likely require several weeks.

### ARGUMENT

It is well established that the Court has the authority to stay proceedings in cases before it. As the Supreme Court stated in *Landis v. North American Co.*, 299 U.S. 248 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis*, 299 U.S. at 254-55.

This requested stay is necessary to effectuate the ABCMR decision, which will resolve most, if not all, of the claims presently before the Court. Once the administrative issues are resolved and Mr. Attia is reinstated, the Army will be able to fix the period of Mr. Attia's entitlement to back pay and allowances, and issue any necessary payments. Consequently, the resolution of this administrative issue will also render moot the first four claims articulated in the complaint. The Government would then seek denial of the remaining claim on the merits, because this Court does not possess jurisdiction to order the correction of military records unless it is "collateral" to a money judgment. 28 U.S.C. § 1491(a)(2). *See also Strickland v. United States*, 61 Fed. Cl. 443, 447 (2004). Thus, a stay to resolve these matters before proceeding with the Court's consideration of Mr. Attia's claims will best serve the interests of judicial economy and justice.

Accordingly, the Government respectfully requests a stay of this matter with the condition that the Government will report to the Court upon the status of the HRC's resolution

of the administrative issues affecting Mr. Attia's reinstatement ninety (90) days from the date of

the Court's order granting the stay, and every thirty (30) days thereafter.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court stay this case, pending

resolution of administrative issues related the Army's reinstatement of Mr. Attia to active duty

status pursuant to the ABCMR's December 7, 2012, decision.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

Captain Geoff Guska
U.S. Army Litigation Division
9275 Gunston Road
Fort Belvoir, VA 22060-5546

REGINALD T. BLADES, JR.
Assistant Director

ALEXIS J. ECHOLS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0463

Date: May 21, 2013

Attorneys for Defendant

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 21st day of May, 2013, I caused to

be placed in the United States mail (first class mail, postage prepaid) copies of "JOINT

MOTION TO STAY" addressed as follows:

Anis Attia
579 61st Street
Apt. 1A
Brooklyn, NY 11220-4632

# APPENDIX



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

SAMR-RB                                                           7 December 2012

MEMORANDUM FOR Commander, US Army Human Resources Command,
1600 Spearhead Division Avenue, Department 100, Fort Knox, KY 40122-5100

SUBJECT: Army Board for Correction of Military Records Record of Proceedings
for Attia, Anis, SSN 054908115, AR20120006588

1. Under the authority of Title 10, United States Code, section 1552, the
recommendation of the Army Board for Correction of Military Records is hereby
approved, and I direct that all the Department of the Army records of the individual
concerned be corrected as shown under Board Determination/Recommendation in the
Record of Proceedings in the subject case enclosed.

2. Request necessary administrative action be taken to effect the correction of records
as indicated no later than **6 February 2013**.  Further, request that the individual
concerned and counsel, if any, as well as any Members of Congress who have shown
interest be advised of the correction and that the Army Board for Correction of Military
Records be furnished a copy of the correspondence.

BY ORDER OF THE SECRETARY OF THE ARMY:

Encl
                                          CATHERINE C. MITRANO
                                          Deputy Assistant Secretary
                                          (Army Review Boards)

CF:
(✓) AMHRR
( ) DFAS

Printed on Recycled Paper

A1

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF:  ATTIA, ANIS

BOARD DATE:  6 December 2012

DOCKET NUMBER:  AR20120006588

THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1.  Application for correction of military records (with supporting documents provided, if any).

2.  Military Personnel Records and advisory opinions (if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1.  The applicant requests through a remand from the U.S. Court of Federal Claims, dated 17 February 2012:

   a.  reinstatement in the Regular Army with back pay;

   b.  a medical evaluation upon reinstatement;

   c.  repayment of dual allowances (basic allowance for housing and cost of living allowance) and payment of non-cash compensation (health insurance, post exchange and commissary benefits, quality of life programs, and tuition assistance to include endorsement to graduate school); and

   d.  correction of his military records (performance evaluations, awards, "expunge records," security clearance, and promotions).

2.  The applicant states the Department of the Army's negligent failure to provide proper medical care caused a cascade of unwarranted consequences during his last assignment culminating in his wrongful discharge.

3.  The applicant provides:

   - 56-page self-authored statement of the case
   - U.S. Court of Federal Claims administrative record on compact disc
   - medical records
   - Meritorious Unit Commendation orders, dated 24 April 2009

1

A2

ABCMR Record of Proceedings (cont)                    AR20120006588

- Valorous Unit Award orders, dated 3 September 2009
- 36-page U.S. Court of Federal Claims Defendant's Motion to Dismiss and Motion for Judgment upon the Administrative Record, dated 27 December 2011

CONSIDERATION OF EVIDENCE:

1. The applicant enlisted in the Regular Army on 1 August 2001. He completed training and was awarded military occupational specialty (MOS) 11B (infantryman).

2. He served in Iraq during the periods 14 February 2003-5 February 2004, 5 December 2004-8 February 2005, and 1 December 2007-1 December 2008.

3. Permanent Orders Number 045-26, dated 14 February 2005, awarded him the Purple Heart for wounds received as a result of hostile enemy action on 3 February 2005.

4. A DA Form 3349 (Physical Profile) shows he was issued a permanent physical profile of "2" for his lower extremities for chronic right knee pain effective 16 August 2005. His limitations and capabilities are shown as:

- no Army Physical Fitness Test (APFT) 2-mile run
- no unlimited running
- no airborne operations
- run at own pace and distance
- ruck at own pace and distance
- lifting or carrying maximum weight of 20 pounds or distance of 4 miles
- running maximum distance of 2 miles
- prolonged standing for a maximum of 15 minutes per episode
- marching with standard field gear except ruck sack for a maximum distance of 0 miles
- impact activities such as jumping for a maximum of 0 repetitions in 1 day

5. His DA Form 2166-8 (Noncommissioned Officer (NCO) Evaluation Report) for the period October 2004 through September 2005 shows his primary and duty MOS as 11B. He passed the APFT in October 2004. He received a "success" rating from his rater in Part IVc (Physical Fitness and Military Bearing) with the following bullet comments:

- profile does not interfere with performance of duty
- worked strenuous hours during the deployment to Operation Iraqi Freedom II

2

A3

- always maintains military bearing; calm under pressure

6. His DA Form 2166-8 for the period October 2005 through December 2005 shows his primary and duty MOS as 11B. He passed the APFT in November 2005.

a. He received a "success" rating from his rater in Physical Fitness and Military Bearing with the following bullet comments:

- scored 245 on the last APFT
- profile interferes with his MOS as an 11B2P

b. He received a "needs improvement" rating from his rater in Part IVd (Leadership) with the following bullet comments:

- Soldier is concerned about himself before unit, mission, or task
- constantly found engaged in areas outside of his appointed place of duty
- lacks effective time management skills

c. He received overall ratings of "successful" and "superior" from his senior rater.

7. His DA Form 2166-8 for the period January 2006 through March 2006 shows his primary and duty MOS as 11B.

a. He received all "success" ratings from his rater in each area of Part IV (Values/NCO Responsibilities). He passed the APFT in November 2005 (within 1 year of the ending date of the rating period). The Physical Fitness and Military Bearing block shows the following bullet comments:

- participates regularly in the company and section physical fitness program
- maintains standards of appearance

b. He received overall ratings of "successful" and "superior" from his senior rater with the following bullet comments:

- retain in current grade; further leadership development needed
- excels in administrative positions as demonstrated by his performance in personnel security issues
- has potential to be a successful 97E (human intelligence collector) upon reclassification

3

A4

ABCMR Record of Proceedings (cont)                    AR20120006588

8. His records do not contain the orders reclassifying him from MOS 11B to MOS 97E.

9. His DA Form 2166-8 for the period 1 April 2006 through 31 March 2007 shows his primary and duty MOS as 97E. He received all excellence and success ratings from his rater in each area of Part IV and overall successful and superior ratings from his senior rater. He passed the APFT on 11 January 2007. The Physical Fitness and Military Bearing block shows the following bullet comments:

- excellent mental and physical abilities; displayed strong stamina
- motivated, enthusiastic NCO; led by example during squad fitness training
- assisted squad in averaging 270 on APFT score

10. His DA Form 2166-8 for the period 1 April 2007 through 31 October 2007 shows his primary and duty MOS as 35L (formerly designated 97E). He passed the APFT on 24 May 2007. He received a "needs improvement" rating from his rater in the Physical Fitness and Military Bearing block with the following bullet comments:

- counseled by squadron CSM for circumventing chain of command for personal gain
- assisted squad in averaging 270 on APFT score

11. On 12 January 2008, the applicant was relieved from his position as battalion human intelligence NCO in charge for the following causes: on numerous occasions he showed a lack of motivation, he failed to display self-confidence, and the chain of command had completely lost confidence in his ability to lead the battalion tactical human intelligence team.

12. A DA Form 3340-R (Request for Reenlistment or Extension in the Regular Army), dated 1 February 2008, shows his unit commander certified that he was fully qualified for reenlistment.

13. On 13 March 2008, the applicant was notified of contemplated administrative reduction action against him for dereliction of duty.

14. On 10 April 2008, the applicant was advised that he was suspected of violating Article 91 of the Uniform Code of Military Justice (UCMJ) for failure to obey General Order (GO) Number 1 by possessing pornographic images and Article 120 for indecent conduct as a photograph of a nude man with an erection had been found on a Morale, Welfare, and Recreation computer used by the applicant. The applicant was subsequently identified during the course of a

4

A5

military police investigation this same date. The same photograph was also found on the applicant's PalmPilot in the course of a search of his living quarters by military police. The search of his living quarters by military police also found over 1,500 pornographic images on his laptop and mobile universal serial bus drive (data storage device).

15. A DA Form 4856 (Developmental Counseling Form), dated 7 August 2008, shows the applicant was counseled regarding his recommended separation for patterns of misconduct under the provisions of Army Regulation 635-200 (Personnel Separations), paragraph 14-12b, for the following reasons:

- possessing pornographic materials punishable under Article 92 of the UCMJ
- disobeying a GO
- violating Central Command GO Number 1 for possessing pornographic materials – "the nude photo taken of yourself and displayed in public is considered indecent exposure and punishable under Article 120(n) of the UCMJ"
- lying to a superior commissioned officer (2nd Squadron, 14th Cavalry Regiment Surgeon)

16. A DA Form 3822-R (Report of Mental Status Evaluation), dated 9 August 2008, shows the applicant was seen by a clinical psychologist at the request of the commander for evaluation in accordance with Army Regulation 635-200, "paragraph 14-12c [sic]." The clinical evaluation indicated the applicant did not suffer from any significant preexisting or current mental health disorders. The applicant was psychiatrically cleared for any administrative action deemed appropriate by the command.

17. Headquarters, 1st Battalion, 206th Field Artillery, 4th Infantry Division, Camp Taji, Iraq, memorandum, dated 17 August 2008, subject: Army Regulation 15-6 (Procedures for Investigating Officers and Boards of Officers) Investigation Findings and Recommendations, states the Commander, 1st Battalion, 14th Infantry Regiment, 2nd Stryker Brigade Combat Team, 25th Infantry Division, did provide redress pertaining to the applicant's requested relief for the following:

- allowed to receive medical attention to recover from injuries – the applicant had been seen by medical physicians at least 15 times, had been to physical therapy at least 40 times, and received medical evaluations from 3 physicians and 3 physical therapists
- seizure and return of personal property – the property was currently being held pending UCMJ/administrative action relating to pornography located

5

on a Space and Naval Warfare Systems Command (SPAWAR) computer, his personal laptop, and cellular telephone in violation of GO Number 1

- reduction in rank – the administrative reduction board was halted due to the alleged violation of GO Number 1 against the applicant
- prevention from seeking medical separation – the applicant shows no sign of neurological pathologies that would demonstrate any signs and symptoms necessary for further testing and evacuation
- acts motivated by hatred due to religion and national origin –

  - no individuals interviewed had any issues with the applicant's religion and it has not been a factor in any of the issues surrounding the applicant
  - his Muslim religion was a benefit in that it provided insights that would not be obtained by someone not of Muslim faith

18. On 8 September 2008, the applicant's company commander notified him that he was initiating action to separate him for a pattern of misconduct under the provisions of Army Regulation 635-200, paragraph 14-12b, with a characterization of general under honorable conditions. The intermediate commanders and the separation authority were not bound by his recommendation as to the characterization of his service. He was further advised that the separation authority in his case was the Commander, 8th Sustainment Command. He was advised that the separation authority may direct characterization of his service as honorable, general, or other than honorable. He stated the reasons for his proposed action were:

- the applicant was in violation of General Order Number 1 by possessing over 1,500 pornographic photographs and/or videos on his personal computer, hard drive, and cellular telephone
- the applicant indecently exposed himself by transferring a naked picture of himself from his cellular telephone to a public computer in the company Internet café
- the applicant made a false official statement to a superior commissioned officer that a captain referred him to a major for additional medical treatment which was entirely false

19. In the company commander's notification, he advised the applicant of his right to consult with counsel, to obtain copies of documents supporting the proposed separation, to request a hearing before an administrative board or present written statements instead of requesting board proceedings, to waive the rights in writing or withdraw such waiver any time prior to the date the separation authority orders, directs, or approves the separation. He advised the applicant that he had satisfied the requirement to undergo a medical examination and a

period of enlistment. He cites Army Regulation 635-200, paragraph 3-8, which states, "characterization of service will be determined solely by the Soldier's military record, which includes the Soldier's behavior and performance of duty during the current enlistment or period of service."

e. He understood he might be ineligible for any future enlistment in the Army.

23. The applicant's records also contain an undated memorandum from his company commander notifying him that he was initiating action to separate him for a pattern of misconduct under the provisions of Army Regulation 635-200, paragraph 14-12b, with a characterization of general under honorable conditions. In this memorandum he was advised that the separation authority in his case was the Commander, 4th Infantry Division.

24. On 8 October 2008, the applicant's brigade commander forwarded nominations for appointment to a standing administrative separation board panel to the Commander, 4th Infantry Division.

25. On 25 October 2008 after hearing all evidence presented before the board and in view of the findings, the Administrative Separation Board, Headquarters and Headquarters Company, 2nd Stryker Brigade Combat Team, recommended the applicant's separation from the Army prior to the expiration of his current term of service under the provisions of Army Regulation 635-200, paragraph 14-12b.

26. On 12 November 2008, the Office of the Staff Judge Advocate, Headquarters, Multi-National Division-Baghdad, Camp Al-Tahreer (Liberty), Iraq, determined that sufficient evidence supported the findings of the administrative separation board, the recommendations were consistent with the findings, and the proceedings complied with the legal requirements of Army Regulation 635-200.

27. On 1 January 2009, the applicant's battalion commander recommended his separation prior to the expiration of his term of service under the provisions of Army Regulation 635-200, paragraph 14-12b, for a pattern of misconduct with a general under honorable conditions character of service. The battalion commander further recommended a waiver of the requirements for a rehabilitative transfer.

28. On 7 January 2009, the applicant's brigade commander directed his separation under the provisions of Army Regulation 635-200, paragraph 14-12b, for a pattern of misconduct with a general under honorable conditions character of service. The brigade commander further directed a waiver of the requirements for a rehabilitative transfer.

8

29. On 14 April 2009, he was discharged under honorable conditions by reason of a pattern of misconduct under the provisions of Army Regulation 635-200, paragraph 14-12b. His DD Form 214 (Certificate of Release or Discharge from Active Duty) shows he completed 7 years, 8 months, and 14 days of active service.

30. His authorized awards are shown on his DD Form 214 as the Bronze Star Medal (2nd Award), Purple Heart, Army Achievement Medal, Presidential Unit Citation, Valorous Unit Award, Army Good Conduct Medal (2nd Award), National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Iraq Campaign Medal with Campaign Star, NCO Professional Development Ribbon "(2nd Award)," Army Service Ribbon, Overseas Service Ribbon (2nd Award), Combat Infantryman Badge, Parachutist Badge, and Expert Marksmanship Qualification Badge with Grenade, Machine Gun, Pistol, and Rifle Bars.

31. On 27 September 2010, the Army Discharge Review Board (ADRB) determined his discharge was both proper and equitable and denied his request for relief. The analyst found no mitigating factors which would merit an upgrade of his discharge. The applicant provided no independent corroborating evidence demonstrating that either the command's action was erroneous or that the applicant's service mitigated his misconduct or poor duty performance.

32. In his statement in support of his application to this Board, dated 28 March 2012, he states he entered military service with a clean bill of health. He describes the following medical issues and circumstances:

a. During basic training he fell on his right elbow and hurt his shoulder which was treated "marginally." In airborne school he suffered from ankle strains and was treated with ibuprofen. He states he deployed to Iraq in support of Operation Iraqi Freedom from 14 February 2003 to 8 February 2004 with untreated injuries and experienced many traumatic events when dealing with severely injured and dying Iraqis. After redeployment he consistently sought care for his ankles; however, he was never referred to the podiatry clinic and was dissuaded from seeking additional care because the x-rays did not show fractures.

b. In July 2004, he was injured during a parachute landing; he landed so hard the whiplash knocked the ballistic helmet off his head and the parachute dragged him for several hundred feet as he was regaining consciousness. He was "merely seen" by the physician assistant in the drop zone who tested him for responsiveness and awareness; he was never referred for future treatment or diagnosis. He started experiencing episodes of back pain, headaches, dizziness, and sleep problems; nevertheless, he was never referred for specialty treatment.

9

ABCMR Record of Proceedings (cont)                              AR20120006588

c.  On 5 December 2004, he deployed to Iraq for a second time.  During this deployment he missed a formation due to his undiagnosed medical problem and sleep disorder.

d.  On 3 February 2005, an enemy grenade detonated in his vicinity and injured his right knee.  He was subsequently airlifted to Landstuhl Regional Medical Center on 4 February.  He was awarded the Purple Heart for his injuries.

e.  He received a permanent physical profile for his knee condition after convalescent leave and several months of physical therapy.  His commander annotated his physical profile form by stating, "Soldier is no longer medically capable of performing the duties of an infantryman," and administratively reclassified him to a new MOS.  While awaiting reclassification orders his pain worsened and he was referred to the chiropractic clinic for back pain management.  His ankle pain became unbearable and he reported pain in his left knee.  Due to the negligence in addressing his medical conditions, his performance decreased as noted in his NCO evaluation reports, resulting in the loss of an award for the second deployment and a lesser award upon his permanent change of station.

f.  During reclassification training, his back pain became unbearable from sitting in the classroom for long hours so he sought private chiropractic therapy. His headaches concurrently amplified and he became very sensitive to light and noise.  He was precluded from seeking medical treatment because he was only authorized a specified number of absences from training.

g.  His medical condition started deteriorating from April through May 2007 during a month-long training period requiring constant wear of a ballistic helmet and body armor.  Following his return from phase 2 of the Basic NCO Course, he needed a physical to apply for appointment as a warrant officer.  He was found medically unqualified and needed a waiver for his medical conditions.  He was referred to an orthopedic surgeon.  X-rays revealed he had degenerative disc disease, but he was granted a waiver.

h.  During 2 months of training wearing protective equipment, his pain grew and started affecting his mood.  His pain was so severe that it made him irritable and he mishandled a situation and slapped an insubordinate Soldier during training.  He received nonjudicial punishment; his commander never made the connection between his medical condition and his increased irritability.

i.  On 30 October 2007, he was attached to Headquarters and Headquarters Company, 1st Battalion, 14th Infantry Regiment, as the interim senior human intelligence operations NCO in charge.  During pre-deployment medical

10

separating members for misconduct. Specific categories include minor disciplinary infractions (a pattern of misconduct consisting solely of minor military disciplinary infractions), a pattern of misconduct (consisting of discreditable involvement with civil or military authorities or conduct prejudicial to good order and discipline), commission of a serious offense, and convictions by civil authorities. Action will be taken to separate a member for misconduct when it is clearly established that rehabilitation is impracticable or is unlikely to succeed. A discharge under other than honorable conditions is normally appropriate for a Soldier discharged under this chapter. However, the separation authority may direct a general discharge if such were merited by the Soldier's overall record. Only a general court-martial convening authority may approve an honorable discharge or delegate approval authority for an honorable discharge under this provision of regulation.

34. Army Regulation 635-200, paragraph 1-19c(2), allows commanders having special court-martial convening authority to serve as the separation authority under the provisions of chapter 14 when a discharge under other than honorable conditions is not warranted and notification procedures are used, when an administrative separation board recommends an entry-level or separation or general discharge, or when a separation board recommends an honorable discharge if the general court-martial convening authority has authorized the exercise of such authority. Paragraph 1-19c(3) states that a special court-martial convening authority is not authorized to convene administrative separation boards in misconduct actions when a characterization of service under other than honorable conditions is contemplated because such actions must be initiated under the administrative board procedures.

35. Army Regulation 635-200, chapter 14, also provides that disposition through medical channels is required if the Soldier has an incapacitating physical or mental illness that was the direct or substantial contributing cause of the conduct for which action prescribed in this regulation is being considered and action under the Uniform Code of Military Justice will not be initiated.

36. Army Regulation 635-40 (Physical Evaluation for Retention, Retirement, or Separation) provides that an enlisted Soldier may not be referred for or continue physical disability processing when action has been started under any regulatory provision which authorizes a characterization of service of under other than honorable conditions, except when the commander exercising general court-martial jurisdiction over the Soldier finds the disability is the cause or a substantial contributing cause of the misconduct that might result in a discharge under other than honorable conditions.

12

ABCMR Record of Proceedings (cont)                    AR20120006588

DISCUSSION AND CONCLUSIONS:

1. The applicant's contention that he was wrongfully discharged from the Regular Army and his request to be reinstated with back pay and allowances were carefully considered.

2. The applicant was found to be in violation of General Order Number 1 by possessing over 1,500 pornographic photographs and/or videos on his personal computer, hard drive, and cellular telephone. In addition, the applicant indecently exposed himself by transferring a naked picture of himself from his cellular telephone to a public computer in the company Internet café. Further, the applicant made a false official statement to a superior commissioned officer that a captain referred him to a major for additional medical treatment which was entirely false. The applicant provided no independent corroborating evidence demonstrating that his service mitigated his misconduct or poor duty performance.

3. The applicant's records contain two memoranda from the same company commander notifying him that he was initiating action to separate him for a pattern of misconduct under the provisions of Army Regulation 635-200, paragraph 14-12b, with a characterization of general under honorable conditions. In a memorandum, dated 8 September 2008, the applicant's company commander advised him that the separation authority in his case was the Commander, 8th Sustainment Command. In an undated memorandum, he was advised that the separation authority in his case was the Commander, 4th Infantry Division.

4. On 7 January 2009, the applicant's brigade commander – having special court-martial convening authority – directed his separation under the provisions of Army Regulation 635-200, paragraph 14-12b, for a pattern of misconduct with a general under honorable conditions character of service. The brigade commander further directed a waiver of the requirements for a rehabilitative transfer. Accordingly, he was discharged under honorable conditions by reason of a pattern of misconduct under the provisions of Army Regulation 635-200, paragraph 14-12b, on 14 April 2009.

5. The applicant was entitled to an administrative separation board by virtue of his length of service and the possibility of his discharge under other than honorable conditions. However, the administrative separation board was appointed by the special court-martial convening authority in clear contravention of the regulation and his separation was directed by the same special court-martial convening authority, also in contravention of the regulation.

13

A12

ABCMR Record of Proceedings (cont)                              AR20120006588

6. There is no evidence that the Commander of the 8th Sustainment Command or the Commander of the 4th Infantry Division – both having general court-martial convening authority – approved the applicant's separation. Army Regulation 635-200 allows a brigade commander to serve as the separation authority when a discharge under other than honorable conditions is not warranted. Therefore, the applicant's brigade commander did not have the authority to appoint an administrative separation board or to direct his separation.

7. As a result, it appears that the applicant was technically denied due process – as opposed to proof of exoneration for his misconduct – and is therefore entitled to reinstatement in the Regular Army with associated back pay and allowances.

8. However, his contention that the Army negligently failed to provide proper medical care which caused a cascade of unwarranted consequences during his last assignment culminating in his wrongful discharge was also carefully considered and determined to lack merit.

9. His medical complaints are acknowledged; however, there is no evidence to show the Army misdiagnosed him or denied appropriate treatment. There also is no evidence he had any medically unfitting conditions which prevented him from performing his assigned duties upon reclassification to MOS 35M. His records show he passed every APFT during the period under review. Further, there is no evidence to show his medical conditions were the direct or substantial contributing cause of the misconduct that led to his recommendation for administrative elimination. As a result, there is no basis for a medical evaluation.

10. The applicant's claim of entitlement to payment of non-cash compensation (health insurance, post exchange and commissary benefits, quality of life programs, and tuition assistance to include endorsement to graduate school) should be adequately resolved by his reinstatement in the Regular Army with associated back pay and allowances. Therefore, no further action is required for compensation of this nature.

BOARD VOTE:

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | GRANT FULL RELIEF |
| _____ | _____ | _____ | GRANT PARTIAL RELIEF |
| _____ | _____ | _____ | GRANT FORMAL HEARING |
| _____ | _____ | _____ | DENY APPLICATION |

14

A13

ABCMR Record of Proceedings (cont)                                      AR20120006588

BOARD DETERMINATION/RECOMMENDATION:

1. The Board determined the evidence presented is sufficient to warrant a recommendation for partial relief. As a result, the Board recommends that all Department of the Army records of the individual concerned be corrected by voiding the applicant's discharge with an effective date of 14 April 2009 and showing he remained on continuous active duty with entitlement to all due pay and allowances.

2. The Board further determined the evidence presented is insufficient to warrant a portion of the requested relief. As a result, the Board recommends denial of so much of the application that pertains to a medical evaluation, payment of non-cash compensation, and expunction of his records.

CHAIRPERSON

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

15

A14



**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

December 07, 2012

AR20120006588, Attia, Anis

Mr. Anis Attia
579 61st Street Apt 1A
Brooklyn NY 11220-4632

Dear Mr. Attia:

The Army Board for Correction of Military Records rendered a decision on your application to correct your military records. Partial relief to your request was granted. Enclosed is a copy of the Record of Proceedings of the Board for your information.

The decision in your case is final and final action has been directed in this matter under the provisions of Section 1552 of Title 10, United States Code and Army Regulation 15-185.

The approved Record of Proceedings has been forwarded to the U.S. Army Human Resources Command. They will take action to correct your records and will provide you with official notification as soon as the directed correction has been made. However, due to the large number of cases in process, please be advised that it may be several months before corrections are completed. Any inquiry concerning your case should be addressed to the Commander, US Army Human Resources Command, 1600 Spearhead Division Avenue, Department 100, Fort Knox, KY 40122-5100.

Sincerely,

Conrad V. Meyer
Director, Army Board for Correction
of Military Records

Enclosure

Printed on Recycled Paper

A15

# In the United States Court of Federal Claims

No. 11-588 C

(Filed February 17, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ANIS ATTIA, | \* |
| | \* |
| *Plaintiff*, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| *Defendant*. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

On February 8, 2012, the parties filed a Joint Motion to Stay. In their motion, the parties request a stay of proceedings in this case so that plaintiff may

> file a proper claim before the [Army Board for
> Correction of Military Records (ABCMR)] and assert
> claims for: (1) wrongful discharge, reinstatement into
> the Army, and back pay; (2) medical evaluation upon
> reinstatement based upon alleged medical malpractice;
> (3) repayment of dual allowances and payment of
> non-cash compensation; and (4) the correction of his
> military records.

Mot. at 4 (footnote omitted). The parties assert that "the stay will either work to resolve most, if not all, of the case administratively or will provide a more complete administrative record for this Court to review. *Id.* at 5 (citation omitted). Further, the parties argue that "[a] stay to pursue these administrative remedies will enable Mr. Attia to obtain consideration of his case upon its merits without litigation, with possible remedies beyond what this Court has jurisdiction to order." *Id.* As for proposed conditions on the stay, the parties' motion sets forth April 1, 2012 as the deadline for the submission of plaintiff's petition to the

ABCMR,[1] and a reporting schedule for defendant's status reports regarding the resolution of plaintiff's petition.

The court acknowledges that plaintiff is proceeding *pro se* and that litigation in this court may be challenging for a plaintiff unrepresented by counsel. Nonetheless, a plaintiff's *pro se* status cannot justify a stay which would allow a case to linger on this court's docket for an indefinite period of time. Here, however, the parties' motion presents just cause for a stay of moderate duration. If plaintiff diligently pursues relief from the ABCMR, the court is willing to stay proceedings in this case for a number of months, but not indefinitely.

Accordingly, it is hereby **ORDERED** that

(1)   The parties' Joint Motion to Stay, filed February 8, 2012, is **GRANTED**, and this case is **STAYED** until further order of the court;

(2)   Plaintiff shall **SUBMIT** a complete application for relief to the ABCMR on or before **April 2, 2012**;

(3)   Defendant shall **FILE** a **Status Report** within fifteen days of plaintiff's application to the ABCMR but no later than **April 17, 2012**, informing the court of the progress of proceedings before the ABCMR;

(4)   Defendant shall **FILE** a **Status Report** on or before **July 17, 2012**, and **every ninety days thereafter**, informing the court of the progress of proceedings before the ABCMR; and

(5)   The parties shall **FILE** a **Joint Status Report** within **fifteen days** of a decision of the ABCMR on plaintiff's application for relief.

LYNN J. BUSH
Judge

---

[1]   Because April 1, 2012 is a Sunday, the proposed filing deadline must be April 2, 2012.